## JEREMIAH KITTREDGE *et al. versus* CHARLES P. SUMNER, Sheriff.

The consignee of 20,000 mats sold them to the plaintiff and himself, at ten cents each, at six months' credit. Both were to be equally interested in the mats, and the consignee was to store them six months free of expense, but the plaintiff was to pay half the expense of putting them into the consignee's loft; and as fast as they should be resold, the proceeds were to be paid to the consignee, who was to allow interest for the same until the six months' credit should expire. Some of the mats were resold within the six months, and at the end of that period, the consignee, in order to prevent the residue from being attached by his creditors, gave a bill of sale of the 20,000 mats to the plaintiff, who was ignorant of such fraudulent intent, and it was agreed that the plaintiff should pay him storage from that date, and interest till the mats should be paid for ; and the plaintiff was not to pay more than $ 1104,50, which sum was paid in cash or notes, until he should have an opportunity, from time to time, to sell the mats, when he was to pay cash for those so disposed of, and in the mean time the consignee was to retain possession of the mats. In an action of trespass by the plaintiff against an officer who attached the mats as the property of the consignee, it was *held*, that by the first sale the plaintiff became tenant in common of the mats, and the possession of the consignee was the possession of the plaintiff; and that the plaintiff being so in possession at the time of the second contract, no new delivery was necessary in order to complete the sale.

*Held* also, that the plaintiff might maintain trespass against the officer.

*Held* also, that the lien, if any, of the consignee, was not an attachable interest, and could not be set up by the attaching officer, in defence to the action.

TRESPASS for 8474 Russia mats, taken by a writ of attachment in favor of John Stone, on May 8, 1829, and sold on execution, by a deputy of the defendant, as the property of George A. Hodges & Co.

At the trial before *Putnam* J. the defendant called G. Wheelwright, the partner of Hodges, who testified that the mats were consigned to the firm by one Slade, for sale, and that on November 5, 1828, they made an agreement with the plaintiffs, Kittredge & Wyman, as follows : — "Bought of George A. Hodges 20,000 Russia mats at ten cents each, at six months' credit, each party equally interested one half each ; said Hodges is to store said mats six months free of expense, and the said Kittredge & Wyman and Hodges are to pay one half of the expenses of hoisting said mats into said Hodges's loft, and no other expense of getting them into said loft. And it is further agreed, that as fast as said mats are sold, the proceeds are to be paid to said Hodges, and he is to allow inter-

Kittredge
v.
Sumner.

est for the same until the six months' credit expires. The expense of delivering said mats to be paid by said Kittredge & Wyman and George A. Hodges & Co. as interested." The mats were kept in the store of Hodges & Co., and had never been out of their possession until they were attached as above mentioned. On May 6, 1829, the plaintiffs and Hodges and Wheelwright made a new arrangement, and a writing was given as follows:—"Boston, May 6, 1829. Messrs. Kittredge & Wyman bought of George A. Hodges & Co. 20,000 Russia mats at 10 cents each, $2000. Received payment. It is understood Kittredge and Wyman are to pay 4 dollars per month storage for the above mats from this date, and interest on the mats until paid, and the said Kittredge and Wyman are not to pay for said mats more than the amount indorsed on this bill, till the same are sold. George A. Hodges & Co. Kittredge & Wyman." Upon this was the following indorsement:—"Boston, May 6, 1829. Received on account of within, $104,50, being for mats sold to this date; also received $20, Nov. 5, 1828; also received $200, May 1, 1829; also received their notes at 30 days for $280, at 4 months for $250, at 6 months for $250,—amounting in all to $1104,50. George A. Hodges & Co." The arrangement of May 6, 1829, was made by Hodges and Wheelwright to prevent an attachment of the property by their creditors, but the plaintiffs had no notice of this intent. Hodges and Wheelwright were to keep possession of the mats until the purchase money should be paid. The plaintiffs gave no note nor money for the part of the mats which was taken by Hodges and Wheelwright under the first agreement, unless the amount (including the notes) indorsed on the bill of sale, over and above the price of 10,000 mats at 10 cents each, should be considered as part payment; but the plaintiffs verbally agreed to pay cash for them as they should have opportunity to sell and dispose of them; and in the mean time Hodges and Wheelwright were to retain possession of them. On November 5, 1828, when the mats were sold as first mentioned, Hodges & Co. gave credit to Slade for 20,000 mats, the supposed quantity sold on that day. The witness considered the mats which were to be paid for in cash, and for which notes had not been given, as belonging to Hodges

and Wheelwright. Speaking of the arrangement. of May 6, the witness said, "We made a new arrangement so far as to give a bill of sale for the whole ; and allowing for what had been previously sold and taken away, the amount sold, together with the cash which the plaintiffs had paid and the notes of hand, were indorsed on the bill of sale, amounting, as was supposed, to about one half of the whole mats. At the time when this arrangement was made, it was proposed to the plaintiffs to give their notes for the whole amount of the mats, in order that Hodges and Wheelwright might raise money upon the notes, but the plaintiffs would not consent, being unwilling to give their notes for any more, but they thought they should pay for the residue in the course of the summer, and were to take them away as they should pay for them." He said he thought that the part of the mats which were not paid for, could be attached, and that his partner, Hodges, giving preference to Stone, who was a creditor of the firm, procured the attachment to be made for Stone, and that Stone had no knowledge that any agreement had been made to sell the mats, or that they had been sold, but supposed, at the time of the attachment, that they belonged to Hodges and Wheelwright.

It was proved that the notes which had been given, were on May 8, 1829, transferred to a creditor of Hodges and Wheelwright ; and when any one of them was paid, mats to the amount were counted off and delivered. And the quantity of mats which came to the amount of the notes and cash indorsed on the bill of sale, and which had not been taken away, were counted off and separated from the whole mass, after the attachment, and the residue, being 8474, were held under the attachment. The number of the mats had never before been ascertained. When the mats were taken by the deputy sheriff, the plaintiffs did not offer to pay the money which they had verbally agreed to pay as before stated.

A verdict was taken for the plaintiffs for the value of the mats at 10 cents each, with interest from the date of the writ, subject to the opinion of the whole Court.

*Bassett*, for the defendant. No actual sale of the mats in question took place, there having been no delivery. There was only a contract of sale, which would not exempt the goods

5 *

*Kittredge*
*v.*
*Sumner.*

*March 24th*
*1830.*

Kittredge
v
Sumner.

from attachment by a creditor of the vendor. The mats were not counted off, and while any thing remains to be done, the sale is not complete. Brown on Sales, 12, 13, 52, 504; Young v. Austin, 6 Pick. 280; Butterfield v. Baker, 5 Pick. 522; Shumway v. Rutter, 7 Pick. 56.

As the plaintiffs never had possession of the goods, trespass will not lie, but trover is the proper remedy. 2 Wms's Saund 47 k, note; 6 Bac. Abr. 564, Trespass, C 2; Smith v. Miller, 1 T. R. 480.

H. H. Fuller, for the plaintiffs. The defendant cannot claim the goods in behalf of creditors of Hodges & Co., because they were agents to sell and could not themselves be the purchasers. Copeland v. Mercantile Ins. Co. 6 Pick. 204.

The principle, that where the goods are to be counted, the property does not pass, applies only to a sale of part of a mass, and not to a sale of the whole. The agreement of the plaintiffs to pay storage is equivalent to a delivery. Long on Sales, 149, 150, 164 to 167; Ross on Vendors, 12, 27, 54, 198; Zwinger v. Samuda, 7 Taunt. 265; Searle v. Keeves, 2 Esp. R. 598; Hurry v. Mangles, 1 Campb. 452; Jewett v. Warren, 12 Mass. R. 300; Chapman v. Searle, 3 Pick. 38; Barrett v. Goddard, 3 Mason, 107.

If the first contract was valid, the plaintiffs were in possession, being tenants in common with Hodges & Co., and a delivery was unnecessary. Beaumont v. Crane, 14 Mass. R. 400. A right to reduce property into possession, entitles a party to bring trespass. Aikin v. Buck, 1 Wendell, 466.

The parol evidence, that the mats were to remain with Hodges & Co. till paid for, was not admissible to control the written contract. And if there was a lien in their favor, it could not prevent the general owner from bringing trespass. Holly v. Huggeford, 8 Pick. 73.

Bassett, in reply. The consignor alone can make the objection, that the sale to Hodges & Co. was invalid.

The tenancy in common ceased when the second contract was made. Half of the mats were then paid for in cash and notes, and the residue were to be paid for when they should be taken away. The plaintiffs could not obtain possession of a part of such residue without paying for the same, and such

part must be counted ; so that the sale was not complete. *Simmons* v. *Swift*, 5 Barn. & Cressw. 857. If the plaintiffs recover, they will in effect obtain the mats without paying for them ; which was a condition precedent.

Kittredge<br>*v.*<br>Sumner.

WILDE J. delivered the opinion of the Court. It appears by the report of the case, that on the 6th of November, 1828, the plaintiffs and Hodges & Co. purchased of Hodges & Co. 20,000 mats, which Hodges & Co. agreed to store for six months free from expense to the plaintiffs, they agreeing to pay their proportion of the expenses of removing the mats into Hodges & Co.'s loft ; and the mats were accordingly removed. On the 6th of May following, a new arrangement was made, and a bill of sale was given to the plaintiffs of the whole of the 20,000 mats, they agreeing to pay for storage of the mats until they should be fully paid for. And at the time of the last contract, and previously, the plaintiffs paid to Hodges & Co. the sum of $ 1104·50, which was indorsed on the last bill of sale.

*March 28th,*<br>1831.

It seems to be very clear, that the plaintiffs, by the first sale, became the owners of one undivided moiety of the mats, the sale being complete by the delivery to Hodges & Co., the vendees of the other moiety, who had them in their actual possession in pursuance of the agreement made at the time of the sale. By the second sale, the property in the other moiety of the mats passed to the plaintiffs, provided the transaction was *bonâ fide*, and without any fraudulent intent on the part of the plaintiffs ; and there is no evidence to show that it was not. The fraudulent intention of Hodges & Wheelwright to prevent the mats from being attached by their creditors, cannot affect the plaintiffs, it being agreed that they were ignorant of this intent. No new delivery was necessary on the second sale, the plaintiffs having at the time an actual or constructive possession of the mats under the first sale and a de livery to one of the vendees. There was, then, a valid purchase by the plaintiffs of the whole property, at an agreed price, part of which was paid in cash and by negotiable notes, and the residue the plaintiffs engaged to pay, with interest, as soon as they might have an opportunity to dispose of the mats.

So that, according to the written evidence, their title to the whole property was complete.[1]

Nor is their title in any way impeached by the oral testimony, which, at the most, only proves that the mats were pledged to Hodges & Wheelwright. But this constituted a personal lien, which is not an attachable interest, and cannot be set up by the attaching officer ; as was decided in the case of *Holly* v. *Huggeford*, 8 Pick. 73. And besides, by parting with the possession, Hodges & Wheelwright lost their lien on the property pledged, and they have not any right of action against the sheriff, because the attachment was made by their procurement, and *volenti non fit injuria.*

But it has been argued, that, however this may be, trespass will not lie against the sheriff. But we think it clear, that on a writ against A, the sheriff has no more right to take the property of B, than he has to arrest his body. The cases cited on this point have been recently considered in the case of *Woodbury et al.* v. *Long*, 8 Pick. 543, and it is unnecessary again to review them.[2]

*Judgment according to verdict.*

---

[1] See *Macomber* v. *Parker*, 13 Pick. 175 ; *S. C.* 14 Pick. 503. If a tenant in common of goods sell them to his cotenant, a delivery is essential to the validity of the sale. *Shurtleff* v. *Willard*, 19 Pick. 210.

See *Stone* v. *Hodges*, 14 Pick. 81.